UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE C., <br>     Plaintiff, <br> v. <br> MARTIN O'MALLEY, <br>     Defendant. | Case No. 24-cv-03542-KAW <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 12, 16 |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, and GRANTS Defendant's cross-motion for summary judgment.

## I.   BACKGROUND

On September 16, 2021, Plaintiff filed for Title II benefits, asserting disability as of March 30, 2018 through her date of last insured of December 31, 2019. (Administrative Record ("AR") 22, 89-91.) The Social Security Administration ("SSA") denied Plaintiff's Title II application initially and on reconsideration. (AR 134, 140.) On December 6, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 146.) On January 5, 2023, Plaintiff filed for Title XVI benefits, asserting disability as of September 2019. (*See* Dkt. No. 12 at 27, 29.) The Title XVI application was escalated and consolidated with the Title II application. (AR 22.)

On June 30, 2023, the ALJ held a hearing. (AR 22.) Following the hearing, the ALJ denied Plaintiff's Title II application on September 5, 2023. (AR 22-34.) In the decision, the ALJ

1  found that the Title XVI application was erroneously escalated and consolidated with the Title II
2  application because the Title II application concerned the period of March 30, 2018 through
3  December 31, 2019, while the Title XVI application contemplated the timeframe from the date of
4  the new application onward. (AR 22.) Thus, the ALJ did not decide the Title XVI application,
5  but remanded this application to the field office. (AR 22.)

6  A request for review of the ALJ's decision was filed with the Appeals Council on
7  September 5, 2023. (AR 214-15.) The Appeals Council denied Plaintiff's request for review on
8  April 22, 2024. (AR 1.)

9  On June 12, 2024, Plaintiff commenced this action for judicial review pursuant to 42
10  U.S.C. § 405(g). (Compl., Dkt. No. 1.) Plaintiff filed the motion for summary judgment on
11  October 11, 2024. (Pl.'s Mot., Dkt. No. 12.) Defendant filed an opposition and cross-motion for
12  summary judgment on December 11, 2024. (Def.'s Opp'n, Dkt. No. 16.) Plaintiff filed a reply on
13  December 26, 2025. (Pl.'s Reply, Dkt. No. 18.)

## II.  LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the

claimant is not disabled. 20 C.F.R. § 404.1520(b).  At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721.  If the answer is no, the claimant is not disabled. *Id.*  If the answer is yes, the Commissioner proceeds to step three and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).  If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f).  RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

### III.   DISCUSSION

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in failing to consolidate the Title II and Title XVI claims, (2) the ALJ failed to find that Plaintiff's degenerative disc disease and mental health impairments were severe impairment at step two, (3) the ALJ erred in considering the medical opinion evidence, (4) the ALJ improperly evaluated Plaintiff's testimony, and (5) the ALJ erred in determining Plaintiff's RFC.

### A.   Consolidation of Title II and Title XVI Claims

First, Plaintiff argues that the ALJ should have considered both Plaintiff's Title II and Title XVI claims because there was overlap in the time period and medical issues.  (Pl.'s Mot. at 5-6.) Plaintiff, however, cites no authority that the ALJ was *required* to consider both claims even if

there was overlap. Rather, "the [SSA]'s rules do not require an ALJ to join pending claims, even when those claims share a common issue, e.g., sharing an overlapping period of time and having the same deciding issue. This rule is simply permissive; an ALJ may, but is not required to, join claims that share a common issue." *Mason v. Berryhill*, No. 3:16-cv-02245-MC, 2018 U.S. Dist. LEXIS 48294, at *6 (D. Or. Mar. 23, 2018). Moreover, it is unclear how the Court could review the Title XVI claim when no final decision has been made; the Title XVI claim was not rejected, but remanded for determination by the field office. (AR 22.) The Court finds no reversible error.

### B. Step Two Severe Impairments

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). As a result, "[a]n impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290).

Here, Plaintiff argues that the ALJ should have found her degenerative disc disease and mental health impairments to be severe impairments. (Pl.'s Mot. at 6.)

#### i. Degenerative Disc Disease

The ALJ found that Plaintiff's degenerative disc disease was not a severe impairment prior to December 31, 2019, the claimant's date of last insured. (AR 26.) Rather, a June 2019 x-ray found "[m]inimal disc space narrowing at L5-S1" and "[n]o acute osseous abnormality of the lumbar spine." (AR 26, 2270.) The ALJ found that compared to subsequent examinations, these findings did not support a diagnosis of degenerative disc disease. (AR 26.) Further, the ALJ found that Plaintiff's limited and conservative treatment related to reports of pain showed there was not more than minimal functional limitations during the relevant period. (AR 26.)

The Court finds no error. Plaintiff argues that she testified to back pain since a car accident in 2006. (Pl.'s Mot. at 7.) Plaintiff, however, cites no record evidence that this back pain was due to the degenerative disc disease, as opposed to her postural orthostatic tachycardia syndrome (which the ALJ did find to be a severe impairment). Plaintiff also points to the June

4

2019 x-ray, but fails to explain how its findings demonstrate that Plaintiff suffered from degenerative disc disease at that time. Further, the ALJ could properly find that the limited and conservative treatment related to the reports of back pain during the relevant period showed it was not a severe impairment. *See Bagdasaryan v. Saul*, 787 Fed. Appx. 423, 424 (9th Cir. 2019) (affirming the ALJ's finding that the plaintiff's fibromyalgia was non-severe at step two where the ALJ found that the condition was well-controlled with medication and did not require a specialist).

In the alternative, Plaintiff argues that the ALJ should have considered medical records from after the date of last insured, specifically January 2023 MRI results that showed disc bulging and protrusions consistent with degenerative disc disease. (Pl.'s Mot. at 8.) In general, "reports containing observations made after the period for disability are relevant to assess the claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). That does not, however, mean that **all** reports are necessarily probative of a plaintiff's capacities during the relevant time period. While Plaintiff's MRI evidenced degenerative disc disease in January 2023, there is no explanation for how it is retrospective to Plaintiff's capacity to work more than three years prior. *See Lisa M. v. Nef*, No. 23-cv-03892-KAW, 2024 U.S. Dist. LEXIS 171513, at *8 (N.D. Cal. Sep. 23, 2024) (finding no error in the consideration of post-2017 records where the plaintiff "fail[ed] to provide any explanation for how Dr. Dickey's opinions as to Plaintiff's capacities in September 2022 are retrospective to Plaintiff's capacity to work in *2017*"); *Szmania v. Kijakazi*, No. 21-36053, 2023 U.S. App. LEXIS 24774, at *2 (9th Cir. Sep. 19, 2023) (finding no error in rejecting opinions "issued several years after Szmania's date last insured [because] they do not address Szmania's level of functioning during the relevant period"). The Court finds that the ALJ did not err in weighing the imaging after Plaintiff's date of last insured.

### ii. Mental Health Impairments

Plaintiff argues that the ALJ erred in failing to find her mental health impairments to be a severe impairment. (Pl.'s Mot. at 9.) Rather, the ALJ found that the records in support of these conditions all concerned the period after Plaintiff's date of last insured, and that the medical records failed to establish those conditions as medically determinable impairments in the scope of

5

1  the Title II application. (AR 26.)

2      First, Plaintiff argues that there was one record of her being treated for anxiety in August
3  2018. (Pl.'s Mot. at 9-10.) The Court notes that the record does not show she was treated for
4  anxiety; rather, she was described as having anxiety, but was in fact treated for physical symptoms
5  related to asthma and a mild urinary tract infection. (AR 677.) Thus, there is no showing that
6  Plaintiff's anxiety resulted in any functional limitations during the relevant period.

7      Second, Plaintiff again complains that the ALJ failed to consider records following her
8  date of last insured. (Pl.'s Mot. at 10.) As before, Plaintiff fails to connect those records to her
9  capacity to work during the relevant period. For example, Plaintiff points to records diagnosing
10 her with major depressive disorder, anxious distress, and post-traumatic stress disorder in
11 September 2022, but does not explain how these disorders affected her ability to work up to
12 December 31, 2019. (*See* AR 2205-09.) While Plaintiff points to a March 2020 diagnoses for
13 anxiety and depression and a prescription for Zoloft in March 2020, Plaintiff does not explain how
14 this affected her ability to work; indeed, the March 2020 treatment was in respect to physical
15 symptoms such as dry cough and wheezing. (AR 717-18.)

16     Accordingly, the Court finds no error in the ALJ's finding that Plaintiff did not have a
17 mental health impairment affecting her ability to work during the relevant period.

18     **C.  Medical Opinions**

19     Next, Plaintiff argues that the ALJ erred in evaluating the opinions of Madeline Furst,
20 N.P., Nina Marucheck, A.M.F.T., Katherine Wiebe, Psy.D., M. Morando, M.D., and Phaedra
21 Caruso-Radin, Psy.D. (Pl.'s Mot. at 11-15.)

22     Under the updated regulations, the SSA "will no longer give any specific evidentiary
23 weight to medical opinions; this includes giving controlling weight to any medical opinion." 20
24 C.F.R. § 416.920c(a). Instead, each medical opinion's persuasiveness is evaluated based on
25 various factors, the most important of which are "supportability" (the extent to which the medical
26 opinion is supported by relevant and objective medical evidence) and "consistency" (the extent to
27 which a medical opinion is consistent with evidence from other medical and nonmedical sources).
28 *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). While a medical source's relationship with

the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Id.* An ALJ, however, "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (internal quotation omitted).

With respect to Ms. Furst, Ms. Marucheck, and Dr. Wiebe, Plaintiff again effectively argues that the ALJ erred in the consideration of records long after the date of last insured of December 31, 2019. Ms. Furst's opinion, which was made on September 14, 2022, found that Plaintiff had severe limitations with her mobility and posture, including her ability to lift, stand, sit, or walk. (AR 2211-17.) The ALJ found that her opinion was inconsistent with Plaintiff's limited and conservative history of treatment during the relevant period. (AR 31-32, 2217.) The ALJ further noted that Ms. Furst's opinion was based primarily on Plaintiff's degenerative disc disease, which was not a medically determinable impairment prior to Plaintiff's date of last insured. (AR 32.) The Court finds no error; the ALJ could reasonably find that Ms. Furst's opinion did not reflect Plaintiff's limitations during the relevant period based on the limited and conservative treatment. *See Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir. 1984) (finding that the ALJ could reasonably consider the remoteness of an opinion where the medical opinion was based on an examination one and a half years after the plaintiff's date of last insured). Further, as discussed above, Plaintiff has not demonstrated that the ALJ erred in finding that Plaintiff's degenerative disc disease was a severe impairment during the relevant period, and that Ms. Furst's opinion's reliance on Plaintiff's degenerative disc disease would not be probative of her capabilities almost three years prior.

Likewise, on September 12, 2022, Ms. Marucheck opined extreme limitations in Plaintiff's cognitive abilities, including her ability to concentrate, interact with others, understand and apply information, and adapt or manage herself. (AR 2207-08.) The ALJ found that Ms. Marucheck's opinion was based on treatment starting in August 2021, after the relevant period. (AR 31, 2205.) The ALJ further explained that the opinion was "wholly inconsistent" with the records from the

7

relevant period, which did not document any mental impairments. (AR 31.) The Court finds no error; the ALJ could reasonably find that such extreme limitations were not consistent with the record when there was no showing of mental impairments prior to December 31, 2019.

Dr. Wiebe, in turn, rendered her opinion on June 3, 2022 based on an assessment of Plaintiff on May 31, 2022. (AR 1916.) Dr. Wiebe found that Plaintiff had moderate to severe impairments in memory, moderate impairment to executive functioning, and mild to moderate impairment in attention and concentration. (AR 1929.) The ALJ found that while Dr. Wiebe's assessment was supported by her observations of Plaintiff during the examination, they were inconsistent with the records from the relevant period, which did not reflect any mental health complaints. (AR 31.) Again, the Court finds no error; the ALJ could reasonably find that an opinion based on an examination from well after the date of last insured was not consistent with records from the relevant period. *See Szmania*, 2023 U.S. Dist. LEXIS 24774, at *3 (finding that the ALJ could assign little weight to the VA's disability rating because it did not address the plaintiff's functional ability during the relevant period, but was instead based on exams that began years after the date of last insured).

Finally, Plaintiff complains that the ALJ improperly found the opinions of Dr. Morando and Caruso-Radin persuasive, arguing that their opinions were incomplete because they did not consider records from after Plaintiff's date of last insured. (Pl.'s Mot. at 15.) For the same reasons as above, the Court finds that the ALJ could reasonably find these opinions were persuasive because the treatment records from after the relevant period do not necessarily reflect Plaintiff's functional capacity during the relevant period.

To summarize, the Court does not suggest that Plaintiff did not suffer from limitations, as found by Ms. Furst, Ms. Marucheck, or Dr. Wiebe. Rather, the issue is whether these records show that Plaintiff suffered limitations in her ability to work *during the relevant time period*. It is not sufficient to simply point to later records; there must be some basis to show that those limitations existed during the relevant time period, particularly when no contemporaneous records indicated limitations then. For example, if the opinions purported to offer a retrospective opinion or were based on a review of the past medical records, the Court could have found they were

8

reflective of Plaintiff's functional capacity during the relevant period.  Absent any such showing or explanation, the Court finds no error.

### D. Plaintiff's Testimony

Next, Plaintiff asserts that the ALJ erred as to Plaintiff's testimony.  Notably, Plaintiff does not challenge the ALJ's reasons for finding that Plaintiff's allegations are not entirely consistent with the evidence.  Rather, Plaintiff complains that the ALJ erred by not discussing Plaintiff's oral testimony; rather, the ALJ only discussed Plaintiff's written statements.  (Pl.'s St. at 16-17.)

Plaintiff cites no authority that the ALJ must specifically discuss Plaintiff's oral testimony, particularly when there is no suggestion that Plaintiff's oral testimony and written statements are inconsistent with each other.  Indeed, Defendant points out -- and Plaintiff does not dispute -- that Plaintiff's oral testimony was generally duplicative of her written statement.  (Def.'s Opp. at 17-18; *see* Pl.'s Reply at 6.)  The Court finds no error.

### E. RFC Finding

Finally, Plaintiff argues that the RFC was not based on substantial evidence because of the above errors.  (Pl.'s Mot. at 18-20.)  Because the Court finds no error as previously discussed, the Court finds no error as to the RFC finding.

## IV.   CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

IT IS SO ORDERED.

Dated: May 28, 2025

KANDIS A. WESTMORE
United States Magistrate Judge